UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:13cv1279 |
| ADRIANA, INC., et al., Defendants. | ) | |

REPORT AND RECOMMENDATION

This matter comes before the Court on Motion for Default Judgment (Dkt. 6) by plaintiff Innovative Sports Management, Inc. ("plaintiff") against defendant Adriana, Inc., doing business as "El Encanto Grocery Monserrate Restaurant" ("El Encanto Restaurant" or "defendant")[1] and pursuant to the Order of December 19, 2013, from the Honorable Claude M. Hilton (Dkt. 9). When no representative for defendant appeared at the hearing on this motion, the undersigned Magistrate Judge took the matter under advisement. Upon consideration of the Complaint (Dkt. 1 ("Compl."), plaintiff's Motion for Default Judgment, and the supporting affidavits, the undersigned Magistrate Judge recommends that default judgment be entered against defendant.

## I. INTRODUCTION

Plaintiff filed this action against defendant on October

[1] Plaintiff named a John Doe defendant in the Complaint but does not seek default judgment against this defendant.

11, 2013, to recover damages for the unauthorized viewing of the October 11, 2011, closed-circuit telecast of "CONCACAF World Cup Qualifier Tournament: Colombia v. Bolivia World Cup Qualifier Game," including preliminary events (collectively "the Event"). (Compl. ¶ 6.) The Complaint alleges violations of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. ¶ 1.) 47 U.S.C. § 553 grants relief for unauthorized reception of cable services, while 47 U.S.C. § 605 affords a remedy for unauthorized publication or use of communications. 47 U.S.C. § 553(a)(1); 47 U.S.C. § 605(a). Plaintiff alleges that defendant unlawfully intercepted and exhibited the closed-circuit telecast of the Event, for which plaintiff was an exclusive commercial distributor. (Compl. ¶¶ 6-8, 13-17.) Plaintiff thus moved for default judgment and now requests the Court to award plaintiff statutory damages, willfulness damages, and attorney's fees and costs. (Mem. Supp. Mot. Default J. 4.)

**A. Jurisdiction and Venue**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render default judgment.

Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the subject matter of this dispute, which arises under § 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.

Personal jurisdiction is proper because defendant is a business entity incorporated in the Commonwealth of Virginia whose principal place of business is at 85 North Glebe Road, Arlington, Virginia 22203. (Compl. ¶ 5; Mem. Supp. Mot. Default J. 1.) Venue in this District is proper under 28 U.S.C. 1391 because plaintiff’s claims arose in this District. (Compl. ¶ 3.)

**B. Service of Process**

On November 14, 2013, plaintiff personally served Antonio Vargas, registered agent of defendant, with a copy of the Complaint and Summons by private process server. (Dkt. 4; Mem. Supp. Mot. Default J. 1-2.) Service was therefore proper under Virginia Code 8.01-299(1) and Federal Rule of Civil Procedure 4(e).

**C. Grounds for Default Judgment**

Defendant has not appeared, answered, or otherwise filed any responsive pleadings in this matter. Plaintiff filed a Motion for Default Judgment on December 13, 2013. (Dkt. 6.) The Clerk of this Court entered default as to defendant on December 17, 2013. (Dkt. 8.) No representative for defendant

appeared at the January 17, 2014, hearing on plaintiff's motion. (Dkt. 14.)

The Complaint sets forth a claim for unauthorized reception of cable service under 47 U.S.C. § 553(a)(1). (Compl. ¶¶ 18-24.) Plaintiff is suing as a "person aggrieved" by a violation of Section 553, which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. §§ 553(a)(1), 553(c)(1).

The Complaint also sets forth a claim for unauthorized publication or use of radio and satellite communications under 47 U.S.C. § 605(a). (Compl. ¶¶ 25-32.) Plaintiff is suing as a "person aggrieved" by a violation of Section 605, which defines a "person aggrieved" as "any person with proprietary rights in the intercepted communication." 47 U.S.C. § 605(d)(6). Section 605 provides that

> [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate … communication by radio and use such communication … for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). When programming is transmitted or intercepted over both cable and satellite mediums, both Sections

553 and 605 apply. Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130-33 (2d Cir. 1996) (noting that Section 553 "applies to any transmissions via cable, whether or not they originate as radio transmissions" and that Section 605 applies to "the interception of cable-borne, as well as over-the-air" broadcasts).

Plaintiff's well-pleaded Complaint establishes that defendant intercepted and/or received, without authorization, the interstate communication of plaintiff's event and then divulged such communication to patrons of El Encanto Restaurant. (Compl. ¶¶ 13-15.) Plaintiff has also established that the closed-circuit broadcast cannot be intercepted innocently or accidentally. (Jacobs Aff. ¶ 9.) Given that the factual allegations alleged in the Complaint are deemed admitted by virtue of defendant's default, the undersigned recommends a finding that plaintiff has established claims for the unauthorized reception of cable and satellite service against defendant.

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiff has established the following facts.[2]

---

[2] The pleadings include the Complaint (Dkt. 1) ("Compl.), plaintiff's Motion for Default Judgment (Dkt. 6) ("Mot. Default

Plaintiff is a corporation organized under the laws of California, with a principal place of business in Hoboken, New Jersey. (Compl. ¶ 4.) Plaintiff is a distributor of sports and entertainment programming who paid substantial fees to enter into a closed-circuit television license agreement ("the License Agreement") to exhibit the October 11, 2011, telecast of "CONCACAF World Cup Qualifier Tournament: Colombia v. Bolivia World Cup Qualifier Game," including preliminary events. (Id. at ¶ 6; Jacobs Aff. ¶ 3.) Through its License Agreement, plaintiff acquired the right to distribute the Event in Virginia. (Compl. ¶¶ 7-8.)

Therefore, any business in Virginia seeking to show the Event was required to pay Plaintiff for the rights to broadcast the Event. (Id.) The transmission of the Event was electronically coded and had to be decoded with electronic equipment in order for a proper signal to be received and televised by the establishment. (Id. at ¶ 10; Jacobs Aff. ¶ 9.) This capability to decipher the code and/or receive appropriate satellite coordinates for televising the Event was available for purchase once an establishment contracted with plaintiff.

---

J."), plaintiff's Memorandum in Support of Default Judgment (Dkt. 7) ("Mem. Supp. Mot. Default J."), the Declaration of W. Brian McCann (Dkt. 7-1) ("McCann Decl."), plaintiff's Affidavit in Support of Plaintiff's Motion for Default Judgment (Dkt. 12) ("Jacobs Aff."), and the Affidavit of Michael Henry (Dkt. 12-1) ("Henry Aff.").

(Compl. ¶ 11; Jacobs Aff. ¶ 8.)

Plaintiff has retained auditors and law enforcement personnel as part of plaintiff's campaign to identify signal pirates and pursue litigation against commercial establishments found to be pirating plaintiff's programming. (Jacobs Aff. ¶¶ 4-6.) Plaintiff provided a list of customers who were authorized to broadcast to participating auditors and law enforcement agencies. (Id. at ¶ 6.) On October 11, 2011, during the broadcast of the Event, Michael Henry, an investigator, entered defendant's establishment. (Henry Aff. 1-2.) He noticed that defendant's establishment was exhibiting the match without plaintiff's permission. (Id.) Henry counted the number of people in the establishment, which has a maximum occupancy capacity of approximately 50 patrons, and submitted an affidavit based on his findings. (Id. at 2.) He counted, on three separate occasions, seven, eight, and nine patrons in defendant's establishment. (Id.)

Based on his investigation, Henry concluded that defendant intercepted and/or received the interstate communication of the Event, and enabled patrons to view the Event without a license from plaintiff. (Id. at 1.) Therefore, plaintiff claims that defendant avoided lawful payment to its company by misappropriating plaintiff's licensed exhibition of the Event while infringing upon plaintiff's exclusive rights. (Compl. ¶¶

13-17; Mem. Supp. Mot. Default J. 2.)

## III. EVALUATION OF PLAINTIFF'S COMPLAINT

### A. Relief Sought

Plaintiff alleges that this case concerns the pilfering and re-transmission of a pay-per-view event. (Mem. Supp. Mot. Default J. 2.) Defendant purportedly intercepted, received, published, divulged, displayed, and/or exhibited the Event for purposes of direct or indirect commercial advantage, in violation of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Thus, plaintiff moves this Court to enter an Order of Default Judgment against defendant as well as award $10,000 in statutory damages, enhanced statutory damages due to willfulness, and reasonable attorney's fees and costs. (Mem. Supp. Mot. Default J. 4; McCann Decl. ¶ 7.)

In support of the claim for damages, plaintiff submitted the Jacobs Affidavit and the McCann Declaration. Although plaintiff has set forth the elements of liability under both Sections 553 and 605, courts have held that recovery under both sections is improper. See Kingvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Co. 2008); Time Warner Cable of New York City v. Sanchez, 2003 WL 21744089, *3 (S.D.N.Y. July 8, 2003). Plaintiff's Motion for Default Judgment does not seek a double recovery, but it does not make clear under which section plaintiff seeks statutory damages.

(Mem. Supp. Mot. Default J. 4.) The undersigned will evaluate plaintiff's claim for statutory damages under Section 605 as it provides for a higher potential damage award. See Sykes, 75 F.3d at 127.

As a "person aggrieved" by a violation of Section 605, plaintiff may be granted injunctive relief and/or damages, and must be granted reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(i)-(iii). The Court may award either actual damages suffered as a result of a violation of Section 605, as well as any profits attributable to the violation, or statutory damages of not less than $1,000.00 and not more than $10,000.00. 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).

Plaintiff's Complaint sought statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), additional damages for willfulness in the amount of $100,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and full costs and expenses, including reasonable attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Compl. ¶ 32.) In moving for a default judgment, plaintiff seeks statutory damages in the amount of $10,000.00, additional damages for willfulness at the Court's discretion, and attorney's fees and costs. (Mem. Supp. Mot. Default J. 4; Jacobs Aff. ¶ 13; McCann Decl. ¶ 7.)

**B. Statutory Damages**

Plaintiff now seeks statutory damages in the amount of $10,000.00. Courts have employed two general approaches to calculating statutory damages: either by basing the damages calculation on the number of patrons in an establishment during the unauthorized broadcast, or by utilizing a flat damage amount. See Joe Hand Promotions, Inc. v. Bougie, Inc., 2010 WL 1790973, *5 (E.D. Va. April 12, 2010) (multiplying the number of customers present by a reasonable rate of $100.00 per customer); Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., 2010 WL 5141768, *5 (D.S.C. Oct. 1, 2010) (awarding five times the license fee for the program); Gutierrez, 544 F. Supp. 2d at 1184 (awarding a flat amount of $5,000.00).

This Court has followed both approaches to calculating damages in varying factual scenarios. In Joe Hand Promotions, Inc., only ten patrons were present for the unlicensed broadcast of a pay-per-view event. 2010 WL 1790973, at *5. This Court awarded $1,000.00 in statutory damages by multiplying the number of customers present by a reasonable rate of $100.00 per customer. Id. In another case, where only five to seven patrons were present for the viewing of a single soccer game in an eight-game package, the Court felt that an award per customer would not provide sufficient deterrence, and instead granted a flat award of $5,000. J&J Sports Prods., Inc. v. Maria, Inc.,

No. 10-cv-1002, slip op. at 12 (E.D. Va. April 1, 2011).

Here, plaintiff has not submitted data showing the amount of any profits that defendant may have acquired by illegally broadcasting the Event. The sub-license fees plaintiff charges to commercial establishments legally purchasing broadcast rights varies based on the capacity of the establishment and the event being licensed. (Jacobs Aff. ¶ 8.) Exhibit 1 to the Jacobs Affidavit shows a price of $750 for bars or restaurants with an occupancy capacity of 1-50 persons. (Jacobs Aff. Ex. 1.) Plaintiff demonstrated that El Encanto Restaurant had a capacity of approximately 50 persons, and that between seven and nine patrons were present during the display of the Event. (Henry Aff.) It thus appears that defendant's establishment was nowhere near capacity during the unlawful telecast of the Event. Given this number, the undersigned finds that an award per customer would not provide sufficient deterrence. Instead, the undersigned finds that a flat award of statutory damages of $5,000 is appropriate in this case and not excessive given the number of patrons present.

**C. Enhanced Statutory Damages**

If the Court finds that the violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain" the Court may increase the amount of actual or statutory damages by an amount of not more than $100,000.00. 47

U.S.C. § 605(e)(3)(C)(ii). Plaintiff's Complaint sought enhanced damages for willfulness in the amount of $100,000.00. In moving for a default judgment, however, plaintiff expressly leaves the amount of enhanced damages to the Court's discretion.

Courts have evaluated whether enhanced damages are appropriate by assessing factors such as "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View Ltd., 554 F. Supp. 2d at 383.

Plaintiff argues that signal piracy is per se intentional because it cannot occur without the intentional modification of electronic equipment, the removal of devices designed to prevent unauthorized exhibition, or other willful acts. (Jacobs Aff. ¶¶ 9, 13.) Plaintiff states that it has lost several millions of dollars due to signal piracy, and that the widespread nature of the piracy problem has resulted in higher costs of services to lawful commercial and residential cable and satellite consumers. (Jacobs Aff. ¶ 11.) Plaintiff urges the Court to consider enhanced damages as a means of deterring future illegal acts and combatting the "widespread piracy problem." (Mem. Supp. Mot. Default J. 3-4.)

Defendant's violation of Section 605, taking place in a commercial establishment rather than a residence, was committed for purposes of direct or indirect commercial advantage. The pleadings make clear that such interception cannot be done accidentally or innocently. An award of some enhanced damages is therefore appropriate as a deterrent. However, the maximum allowable enhanced damages award is inappropriate when the evidence before the Court suggests that defendants' commercial gain resulting from the unauthorized broadcast was likely nominal.

Here, there were at most nine patrons in El Encanto Restaurant at the time of the unauthorized broadcast. (Henry Aff. 2.) Plaintiff has not provided any evidence of repeated violations, nor has plaintiff shown that defendants advertised the unauthorized broadcast. Further, plaintiff's investigator did not pay a cover charge to enter the El Encanto Restaurant and there is no evidence that defendants charged a premium for food or drink. (Id. at 1-2.)

The undersigned finds that defendants' actions were taken willfully and for direct or indirect commercial advantage and that plaintiff is thus entitled to enhanced damages in the amount of $5,000.00. The combination of $5,000.00 in statutory damages and $5,000.00 in enhanced damages both compensates plaintiff and serves as a deterrent to future signal piracy by

defendants and others.

**D. Attorney's Fees and Costs**

Plaintiff seeks to recover attorney's fees and costs. In support of this request, plaintiff submitted the Declaration of W. Brian McCann (Dkt. 7-1) detailing the work done, hours expended, and the total amount due.

Mr. McCann declared that his firm anticipated expending a total of 11 hours of attorney time at rates of $200.00 per hour. (Id. at 2-4.) The work completed in these hours includes, *inter alia*, drafting pleadings filed with the Court and correspondence with the client. (Id.) Counsel also included anticipatory billings of 4.0 hours for driving to and from Alexandria, VA from his office in Henrico, VA to attend the hearing on January 17, 2014, and an additional 1.0 hours for attending that hearing. (Id. at 4.) However, pursuant to counsel's request, the Court excused counsel's presence at the hearing on January 17. (Dkt. 14.) Therefore, the Court finds that counsel reasonably expended a total of 6.0 hours of attorney time on this case, equaling $1,200.00 in attorneys' fees.

Plaintiff also seeks $435.50 in costs representing the $400.00 filing fee, $22.00 in service of process fees, and $13.50 in miscellaneous fees such as postage and copying. (Id. at 4.)

The undersigned finds that the requested fees and costs are

reasonable compensation for the time expended to vindicate plaintiff's rights and recommends an award of $1,635.50.

## IV. RECOMMENDATION

The undersigned Magistrate Judge recommends entry of judgment in the amount of $11,635.50 in favor of plaintiff Innovative Sports Management, Inc. against defendant Adriana, Inc. Specifically, the undersigned recommends an award of $5,000.00 in statutory damages, $5,000.00 in enhanced damages, and attorney's fees and costs in the amount of $1,635.50.

## V. NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendant at the following address:

Antonio Vargas
Registered Agent for Adriana, Inc., d/b/a
El Encanto Grocery Monserrate Restaurant
85 North Glebe Road
Arlington, Virginia 22203

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

February 3, 2014
Alexandria, Virginia